**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| SHAWNA MCGINNIS,<br><br>Plaintiff,<br><br>v.<br><br>RETIREMENT UNLIMITED INC.,<br><br>Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 1:24-cv-10379-KMW-EAP<br><br>**OPINION** |

**Jeffrey P. Resnick, Esquire**
SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, PC
308 Harper Drive, Suite 200
Moorestown, NJ 08057

*Counsel for Plaintiff Shawna McGinnis*

**Melissa Jennifer Brown, Esquire**
GORDON & REES
5 Greentree Center, Suite 101
Marlton, NJ 08053

*Counsel for Defendant Retirement Unlimited Inc.*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiff Shawna McGinnis ("Plaintiff") brings this employment discrimination case against her former employer, Defendant Retirement Unlimited, Inc. ("Defendant"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Rev. Stat. § 10:5-1 *et seq.* Plaintiff contends that Defendant unlawfully terminated her employment rather than engage in an interactive process to determine whether her disability could be reasonably accommodated. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56 arguing principally that Plaintiff did not request an accommodation and that, regardless, the record contains no evidence that a reasonable accommodation would have enabled her to continue working. The Court has considered

the parties' written submissions, finds oral argument unnecessary, and decides the motion on the papers. For the reasons set forth below, Defendant's motion is **GRANTED**.

## II. BACKGROUND

Plaintiff worked as a graphic designer in Defendant's marketing department until July 2024 when she was terminated based on the information Plaintiff provided when completing Defendant's Reasonable Accommodation Request Form ("ARF"). (ECF No. 1 ¶¶ 10, 26; ECF No. 30-14 at 2–4.) The relevant facts surrounding Plaintiff's termination are as follows.

On April 25, 2024, Defendant granted Plaintiff twelve-weeks of leave in accordance with the Family Medical Leave Act ("FMLA"). (ECF No. 1 ¶¶ 20, 22; Pl.'s Dep. at 40:16–22; ECF No. 30-7 at 3–4 (FMLA leave emails); ECF No. 30-8 (FMLA Designation Notice Form).) While on FMLA leave, Plaintiff was diagnosed with visual vertigo. (ECF No. 1 ¶ 21; Pl.'s Dep. at 39:3–20.) On June 5, 2024, Plaintiff emailed Defendant, stating that her "medical leave ha[d] been pushed to July." (ECF No. 30-9 at 2.) On July 2, 2024, Defendant notified Plaintiff that she had exhausted her FMLA leave and provided Plaintiff with the ARF for her and her medical provider to complete. (ECF No. 30-11; Pl.'s Dep. at 40:19–22.) Plaintiff testified that she "tried to call" Defendant but "couldn't get through" as she was not clear about the process. (Pl.'s Dep. at 41:14–42:1.) She further testified that she expected Defendant to discuss her symptoms and possible accommodations with her. (*Id.* at 43:19–25.)

Plaintiff nonetheless communicated with Defendant via email. (ECF No. 30-12.) On July 10, 2024, Plaintiff sent Defendant two emails. (*Id.*) The first email provided "[I] do have an update[sic] note from my medical provider about permanent disability," attaching a letter from her medical provider, Jocelyn Foster, APN ("Foster"), noting that her symptoms "continue to worsen." (ECF Nos. 30-13, 30-12.) In the second email, Plaintiff subsequently returned the completed ARF.

(ECF No. 30-12; ECF No. 30-14 at 2–4 (ARF).) On her portion, she identified the symptoms affecting her work. (ECF No. 30-14 at 2.) Plaintiff's symptoms included "severe dizziness, vertigo, heart palpitations, chest pain, shaking spells, headaches, blurred and double vision, watery eyes, and tinnitus." (ECF No. 1 ¶ 15; ECF No. 30-14 at 2.) When asked whether she had "any suggestions regarding possible accommodations to enable [her] to successfully perform the essential functions of [her] job," Plaintiff answered, "No." (ECF No. 30-14 at 2.) Plaintiff explains that she did not know what accommodations might be available and expected Defendant to contact her to discuss possible options. (Pl.'s Dep. at 54:14–55:2.)

The parties agree that Foster marked "Permanently" for the duration of the request and selected "Never" on the line labeled "Working." (ECF No. 30-14 at 3; ECF 30-3 ¶ 24; ECF 32-1 ¶ 24.) They also agree that Foster answered "Yes' when asked whether performing Plaintiff's job functions would present a safety or health threat and answered "No" when asked whether another accommodation would eliminate that threat. (ECF No. 30-14 at 4; ECF 30-3 ¶¶ 26, 27; ECF 32-1 ¶¶ 26, 27.) Plaintiff disputes the conclusions Defendant draws from those answers and contends that Defendant should have sought clarification rather than treating the form as establishing that she could not work. (ECF No. 32 at 12; ECF No. 32-1 ¶ 25.)

On July 11, 2024, Defendant terminated Plaintiff's employment. (ECF No. 30-15 at 2.) Its letter expressly referred to her "request for reasonable accommodations" and stated that Defendant had been evaluating that request as part of the interactive process. (*Id.*) The letter identified Plaintiff's restriction as "Permanent Disability" and stated that Defendant could not provide an accommodation enabling her to perform her existing position or an open permanent position compatible with her limitations. (*Id.*) It also stated that continued absence would impose an undue hardship. (*Id.*)

At her deposition, Plaintiff acknowledged that she could not return to fulfill her graphic-design responsibilities when her leave expired.[1] (Pl.'s Dep. at 40:5–11, 42:3–6.) When asked whether she could perform that role during the period when the form was completed, she answered, "Most likely not in 2024." (*Id.* at 47:6–12.) She nevertheless explained that she would have preferred to work if an accommodation existed. (*Id.* at 43:22–44:1.)

Plaintiff identified flexible hours, remote work, and breaks as accommodations she had since researched. (Pl.'s Dep. at 61:15–21.). She explained that remote work would have avoided the difficulty of driving to the office and allowed her to lie down to rest and calm her symptoms. (*Id.* at 48:17–23.) She acknowledged, however, that remote graphic design work would still require computer use. (*Id.* at 48:7–16.).

On November 6, 2024, Plaintiff initiated this action asserting claims under the ADA and NJLAD. (ECF No. 1.) On January 10, 2025, Defendant filed its Answer. (ECF No. 6.) On March 30, 2026, following the close of fact discovery, Defendant filed this Motion for Summary Judgment (ECF No. 30). Pursuant to Local Rule 56.1(a), Defendant included in its Motion a Statement of Undisputed Material Facts ("SUMF") (ECF No. 30-3). On March 23, 2026, Plaintiff filed opposition to the motion, (ECF No. 32) including her responsive statement of material facts ("RSMF") (ECF No. 32-1). *See* L. Civ. R. 56.1(a). In the statement, Plaintiff repeatedly responds to Defendant's enumerations with "Denied as stated," admitting portions of the statement while reframing the remainder and pointing to her deposition testimony. (*See, e.g.*, ECF No. 32-1 ¶¶ 8,

---

[1] As a graphic designer, Plaintiff worked primarily on a computer, using various computer programs; she admits that these programs were necessary to her role and could not be performed any other way. (Pl.'s Dep. at 22:11–23, 25:11–14, 32:5–33:22.) Plaintiff testified that all aspects of her job involved a computer program. (*Id.* at 33:19–22.) Plaintiff noticed that her symptoms, beginning in January 2024, "significantly impaired [her] ability to perform her duties"; she noted that she "was in so much pain," and could not sit in front of a computer for long periods of time. (Pl.'s Dep. at 36:1–9, 39:17–20; ECF No. 1 ¶ 16.) Plaintiff further testified that in January 2024, at the early stage of her symptoms, she was not "centering" her designs, they were "missing information," and she was "getting confused a lot with what the projects needed to be done." (Pl.'s Dep. at 36:14–19.)

10; *see* ECF No. 32 at 12–13.) On April 4, 2026, Defendant replied to Plaintiff's opposition. (ECF No. 33.)

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

Once the moving party identifies the absence of evidence supporting an essential element on which the opposing party bears the burden of proof, the opposing party must identify specific evidence permitting a finding in its favor. *Anderson*, 477 U.S. at 256–57. That evidence may include the opposing party's own deposition testimony. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating a plaintiff may assert that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true."(citation omitted)). However, mere allegations and speculation do not establish a genuine dispute. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018).

Summary judgment is a "drastic remedy" that should not be granted "where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974) (citation omitted). The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact by way of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 324 (1986)). The burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denials of his [or her] pleading, but his [or her] response must set forth specific facts showing that there is a genuine issue for trial." *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

## IV. DISCUSSION

The parties' dispute arises out of their differing views about the provision and submission of the ARF, their differing interpretations of the information contained on the completed ARF, and their respective duties and obligations stemming from same. Plaintiff contends that her submission of the ARF required Defendant to engage in the interactive process by reaching out to her and Foster to discuss available positions with Defendant and determine if she could be reasonably accommodated in those positions. (ECF No. 32 at 5–6, 10, 12–13.) Plaintiff further contends that Defendant's failure to do so constituted disability discrimination under the ADA and NJLAD. (*Id.* at 15, 17–18.) On the other hand, Defendant submits that based on the unequivocal information provided on the ARF, Plaintiff was not seeking an accommodation but rather confirming her inability to work in any capacity and would instead be seeking permanent disability.[2] (ECF No. 33 at 5–11.) Summary judgment is warranted for one paramount reason: Plaintiff has failed to

[2] The Court does not address the interplay between qualifying for permanent disability and an employer's obligation to provide an accommodation because the motion is decided on other grounds.

identify an available reasonable accommodation.

Under the ADA and NJLAD, an employer must reasonably accommodate the known limitations of an otherwise qualified employee with a disability unless doing so would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A); *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 396–97 (App. Div. 2002). This obligation includes engaging in an interactive process with the employee to identify an appropriate reasonable accommodation. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311–12 (3d Cir. 1999); *Tynan*, 351 N.J. Super. at 396–97. To establish that an employer failed to participate in the interactive process, a plaintiff must demonstrate that (1) the employer knew of the employee's disability; (2) the employee requested accommodations or assistance; (3) the employer failed to make a good-faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Taylor*, 184 F.3d at 319–20; *Tynan*, 351 N.J. Super. at 400–01.

Importantly, an employer's failure to engage in the interactive process does not, standing alone, establish liability. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 194 (3d Cir. 2009). Rather, a plaintiff must demonstrate that a reasonable accommodation was available that would have permitted her to perform the essential functions of her position. *Taylor*, 184 F.3d at 315; *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 581 (3d Cir. 1998). Although an employee need not identify a particular accommodation when initially requesting assistance, she must ultimately identify an accommodation that could reasonably have been provided. *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 603–04 (D.N.J. 2015) (citing *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 233–34 (3d Cir. 2000)). Thus, where no reasonable accommodation was possible, an employer's alleged failure to participate in the interactive process cannot support a failure-to-accommodate claim. *Gaul*, 134 F.3d at 581.

Here, Plaintiff contends that Defendant failed to engage in the interactive process because it did not contact her or Foster to explore potential accommodations after receiving her Accommodation Request Form ("ARF"). (ECF No. 1 ¶ 26; ECF No. 32 at 11–12.) The undisputed record establishes that, after Plaintiff exhausted her FMLA leave and advised Defendant that she could not return to work as scheduled, Defendant provided her with the ARF. (ECF Nos. 30-8, 30-9, 30-11.) Plaintiff and Foster completed and returned the ARF, and Defendant subsequently acknowledged Plaintiff's request for an accommodation in its July 11 letter. (ECF No. 30-14; Pl.'s Dep. at 42:12–43:11; ECF No. 30-15 at 2.) Although these communications demonstrate that Defendant took steps to evaluate Plaintiff's request, Plaintiff maintains that Defendant should have engaged in further discussions before terminating her employment. (ECF No. 32 at 11–13.) The Court need not determine whether Defendant's participation in the interactive process was sufficient because, even assuming further communication was warranted, Plaintiff has failed to demonstrate that a reasonable accommodation was available.

The undisputed evidence establishes that Plaintiff's essential job responsibilities as a graphic designer required computer use; Plaintiff testified that all aspects of her job involved computer programs and that those programs were necessary to perform her duties. (Pl.'s Dep. at 22:11–23, 25:11–14, 32:5–33:22.) Plaintiff further acknowledged that her symptoms "significantly impaired" her ability to perform those responsibilities. (ECF No. 1 ¶ 16.) Specifically, she testified that she experienced substantial pain that prevented her from sitting in front of a computer for extended periods and that her symptoms caused her to make errors, omit information, and become confused about her assignments. (Pl.'s Dep. at 36:1–19, 39:17–20.) Plaintiff acknowledged that she could not return to perform her graphic-design responsibilities when her leave expired and, when asked whether she could perform that role during the period when the ARF was completed,

responded, "Most likely not in 2024." (*Id.* at 40:5–11, 42:3–6, 47:6–12.) Consistent with that testimony, the ARF identified her work restriction as "permanent" and indicated that she could "never" work. (ECF No. 30-14 at 3.)[3]

Plaintiff nevertheless testified that she would have preferred to continue working if an accommodation were available. (Pl.'s Dep. at 43:22–44:1.) She identified flexible hours, remote work, and breaks as potential accommodations she had subsequently researched. (*Id.* at 61:15–21.) However, Plaintiff has not presented evidence that any of these accommodations would have permitted her to perform the essential functions of her position. Although remote work would have eliminated the need to drive to the office and permitted Plaintiff to lie down when necessary, Plaintiff acknowledged that performing her graphic-design responsibilities remotely would still require computer use. (*Id.* at 48:7–23.) Thus, remote work would not eliminate the essential computer-based duties that Plaintiff testified she could not perform. Nor has Plaintiff identified evidence that flexible hours or additional breaks would have enabled her to perform those duties notwithstanding her symptoms. To the contrary, her testimony indicates that she likely could not perform her graphic-design responsibilities during 2024, regardless of where or when she worked. (*Id.* at 47:6–12.)

To be sure, Plaintiff was not required to identify a particular accommodation when she initially requested assistance from Defendant. *See Taylor*, 184 F.3d at 311–12; *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506–07 (3d Cir. 2010). Nor does her failure to suggest an accommodation on the ARF, standing alone, defeat her claim. Nevertheless, at summary judgment, Plaintiff must

[3] The Court also notes that Foster indicated that Plaintiff's condition "continue[d] to worsen" and that performing any of her job functions would pose a direct threat to her health or safety or that of others. (ECF No. 30-13 at 2–3; ECF No. 30-14 at 4.) Because summary judgment is warranted on the other grounds discussed above, the Court need not separately consider whether these restrictions rendered Plaintiff unqualified under the ADA's direct-threat provisions. *See Buskirk v. Apollo Metals,* 307 F.3d 160, 168 (3d Cir. 2002).

identify evidence from which a reasonable jury could conclude that an accommodation was available that would have permitted her to perform the essential functions of her position. *See Bertolotti*, 132 F. Supp. 3d at 603–04; *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 233–34 (3d Cir. 2000). Plaintiff has not done so. Although she identified possible accommodations during her deposition, she offered no evidence that any would have enabled her to perform the computer-based responsibilities that were essential to her position. Her expressed willingness to work if an accommodation existed, while understandable, does not establish that such an accommodation was available.[4]

Accordingly, even assuming Defendant should have engaged in further discussions with Plaintiff or Foster after receiving the ARF, Plaintiff has not demonstrated that those discussions would have yielded a reasonable accommodation. Because Plaintiff cannot establish that she could have been reasonably accommodated but for Defendant's alleged failure to participate in the interactive process, her claims fail as a matter of law. *Taylor*, 184 F.3d at 319–20; *Tynan*, 351 N.J. Super. at 400–01. Therefore, summary judgment is warranted on Plaintiff's failure-to-accommodate claims under the ADA and NJLAD.

[4] The Court does not suggest that remote work, flexible scheduling, or additional breaks can never constitute reasonable accommodations. Rather, Plaintiff has failed to present evidence that any such arrangement would have enabled her to perform the essential computer-based duties of her particular position in light of the limitations she describes.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 30) is hereby **GRANTED**.

Dated: November 2, 2026

KAREN M. WILLIAMS
United States District Judge